SPALTER v. WAYNE CIRCUIT JUDGE

OPINION OF THE COURT

1. CONTEMPT—CIVIL CONTEMPT—CRIMINAL CONTEMPT—DISTINCTION.

The purpose of a contempt citation determines whether the contempt is civil or criminal; if the purpose is to punish an offender for his disobedience or contumacious behavior, the contempt is criminal, but if the purpose is to compel obedience to a court order, the contempt is civil.

2. CONTEMPT—CIVIL CONTEMPT—LENGTH OF INCARCERATION.

One convicted and sentenced for civil contempt may not be incarcerated beyond the time that he is able to comply with the court order he violated, because the purpose of a civil contempt citation is to enforce compliance with a court order, rather than to inflict punishment for disobeying it; the justification for coercive imprisonment for civil contempt depends upon the contemnor's ability to comply with the order.

3. CONTEMPT—CITIZENS' GRAND JURY—PURGING CONTEMPT—RIGHT TO GRAND JURY'S RECALL.

A witness who has been convicted of contempt for neglecting or

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contempt §§ 4, 5.
[2] 17 Am Jur 2d, Contempt § 111.
[3] 17 Am Jur 2d, Contempt §§ 4, 9.
[4] 17 Am Jur 2d, Contempt § 4.
[5-7] 17 Am Jur 2d, Contempt §§ 4, 30, 111.
[8] 8 Am Jur 2d, Bail and Recognizance § 23.
[9, 10] 38 Am Jur 2d, Grand Jury § 10.

refusing to appear or to testify before a citizens' grand jury has an absolute right at any time to have the court recall the grand jury in order to afford him an opportunity to purge himself of the contempt; after testifying before the grand jury, the witness has an absolute right to have his sentence commuted if the court finds that the witness has in fact purged himself (MCLA §§ 767.7a, 767.19c).

4. CONTEMPT—CITIZENS' GRAND JURY—CIVIL CONTEMPT—STATUTES.

A contempt citation under the statute providing that a witness who, having been found in contempt for refusing or neglecting to appear or to testify before a citizens' grand jury, has the absolute right to purge himself at any time, is a civil contempt, because the witness carries in his pocket the keys to his cell; a sentence for contempt under the statute is necessarily conditional and coercive, not unconditional and punitive (MCLA § 767.19c).

5. CONTEMPT—CIVIL CONTEMPT—CITIZENS' GRAND JURY—EXPIRATION OF TERM.

The expiration of the term of a citizens' grand jury of which a defendant was cited for civil contempt does not deprive the contemnor of the opportunity to purge himself, since he has statutory right to have the sentencing judge recall the grand jury for the purpose of purging himself (MCLA § 767.19c).

6. CONTEMPT—CITIZENS' GRAND JURY—LENGTH OF INCARCERATION—EXPIRATION OF GRAND JURY'S TERM—RIGHT TO RECALL.

Court order of sentence for a person cited for civil contempt of a citizens' grand jury providing that the sentence was "until the expiration of the grand jury term" did not mean that the contemnor was to be released even though the grand jury's term had expired, because, by statute, a contemnor has an absolute right to have the grand jury recalled in order to purge himself and because the order of sentence was based on a form used before the statutory right to recall a grand jury was provided (MCLA §§ 767.7a, 767.19c).

7. CONTEMPT—CITIZENS' GRAND JURY—RECALL OF GRAND JURY—POWER TO RECALL.

Contention that the judge who sentenced the defendant for civil contempt of a citizens' grand jury did not have the power to recall the grand jury in order to allow the contemnor to purge himself because another judge had convened the grand jury was without merit because the contemnor, having an absolute

statutory right to have the grand jury recalled in order to purge himself, need only express his desire to the circuit court to purge himself and the court is obliged to recall the grand jury.

8. BAIL—BAIL PENDING APPEAL—CONSTITUTIONAL QUESTIONS.

A witness cited for civil contempt of a citizens' grand jury was entitled to bail pending appeal to the Michigan Supreme Court where the witness had argued that the expiration of the term of the grand jury had ended his opportunity to purge himself, and, thus, also his sentence, the Court of Appeals had rejected that position, the witness, if the Michigan Supreme Court reverses the Court of Appeals, would be unjustly incarcerated if bail were not granted, the sentence of the witness, having only 71 days to run, might be served by the time an appeal could be decided, rendering the important issue moot, and the witness, who had been on bail appeared on numerous occasions and there was no reason to believe that if his appeal were unsuccessful he would fail to serve the 71 days (MCLA § 767.19c).

DISSENT BY O'HARA, J.

9. GRAND JURY—CITIZENS' GRAND JURY—LENGTH OF TERM.

*The term of service of a citizens' grand jury cannot exceed 12 months for any reason or under any circumstances.*

10. GRAND JURY—CITIZENS' GRAND JURY—RECALL.

*The term "recall" as used in the statute governing citizens' grand juries relates to a period during which the grand jury has either completed its investigation or has temporarily suspended its activities, but the term of the jurors has not been terminated by formal order, or has not expired by the self-operative words of the statute (MCLA § 767.19c).*

Original action in the Court of Appeals. Submitted Division 1 July 15, 1971, at Detroit. (Docket No. 11748.) Decided July 16, 1971. Opinions released July 23, 1971. Leave to appeal denied, 386 Mich 762.

Complaint in the Court of Appeals for habeas corpus by Louis Spalter against Nathan J. Kaufman, Wayne Circuit Judge, and W. H. Bannan,

Superintendent of the Detroit House of Correction. Writ denied; plaintiff admitted to bail.

*Louisell & Gillis,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle* and *Michael R. Mueller,* Assistant Prosecuting Attorneys, for defendants.

Before: DANHOF, P. J., and LEVIN and O'HARA,* JJ.

LEVIN, J.  In 1970 the Legislature amended the provisions of the Code of Criminal Procedure concerning grand juries with a view to strengthening the power of grand juries composed of citizens of the community.  PA 1970, No 9.[1]  This case arises under the 1970 amendatory act.

Louis Spalter was convicted of contempt for failing to answer questions put to him by a citizens' grand jury after he was granted immunity pursuant to §§ 19a, 19b of the amended statute.[2]  His conviction was affirmed by our Court.[3]

Spalter was sentenced to serve six months and he commenced service of the sentence on March 31, 1971.  When the term of service of the grand jurors expired on May 10, 1971, he sought release on the

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA § 767.7a (Stat Ann 1971 Cum Supp § 28.947[1]).

[2] MCLA §§ 767.19a, 767.19b (Stat Ann 1971 Cum Supp §§ 28.959 [1], 28.959[2]).

[3] *In re Spalter* (1971), 31 Mich App 458.  Leave to appeal was denied by the Michigan Supreme Court on April 8, 1971, 384 Mich 823.

alternative grounds that (1) under the express terms of the order of sentence he was to be released upon the expiration of the "term" of the grand jury; (2) he was convicted of civil contempt and upon expiration of the term of the grand jury he no longer had a forum before which he could purge himself of the contempt.

After the circuit court refused to release him, Spalter filed in our Court an application for a writ of superintending control or a writ of habeas corpus. When we declined to issue a writ, he applied to the Supreme Court. On June 3, 1971, the Supreme Court entered the following order:

"On order of the Court, emergency complaint by plaintiff and appellant for superintending control is considered and treated as a motion for superintending control pursuant to GCR 1963, 862.5, and so treated, the motion is granted and the cause remanded to the Court of Appeals for issuance of an order to show cause why habeas corpus should not issue. See, *Shillitani* v. *United States* (1966), 384 US 364. Plaintiff-appellee's motion for bond pending decision on the merits is denied without prejudice."

A hearing was held by our Court on July 15, 1971, and on the following day we entered an order denying Spalter's application for a writ, Judge O'HARA dissenting, with the opinions of the Court to follow. Our order further provided that Spalter would be released upon posting a surety bond in the amount of $5,000.

## I.

Contempt may be civil or criminal. Whether it is one or the other depends on the purpose sought to be achieved. If it is to punish the offender for his disobedience or contumacious behavior, then it

is criminal contempt. If, however, the purpose is to compel obedience to an order of the court, then it is civil contempt.[4]

Since the purpose of civil contempt is to enforce compliance with a court's order rather than to punish for disobedience, one convicted and sentenced for civil contempt may not be incarcerated beyond the time that he is able to comply with the court's order.[5] In *Shillitani* v. *United States* (1966), 384 US 364, 371 (86 S Ct 1531, 1536; 16 L Ed 2d 622, 627, 628), the United States Supreme Court declared:

"However, the justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order. [citation omitted] Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt."

In *Shillitani,* the Court ruled that the contempt orders entered against the contemnors were "improper insofar as they imposed sentences that extended beyond the cessation of the grand jury's inquiry into petitioners' activities. Having sought to deal only with civil contempt, the District Courts lacked authority to imprison petitioners for a period longer than the term of the grand jury".

This limitation on the length of a contempt sentence has been a source of considerable confusion. Understandably, contemnors incarcerated beyond the term of a grand jury have claimed that the contempt is civil and that they are entitled to be dis-

---

[4] *In re Colacasides* (1967), 6 Mich App 298, 301, 302; *People* v. *Nowicki* (1969), 17 Mich App 525, *reversed* on other grounds (1971), 384 Mich 482.

[5] *People* v. *Johns* (1971), 384 Mich 325, 333; *In re Colacasides, supra,* p 304.

charged.[6] When the State, in response, has asserted that the conviction was for criminal contempt, it has encountered other limitations;[7] see, *e.g., People v. Johns* (1971), 384 Mich 325, 333, where the Michigan Supreme Court held that "in order to obviate the confusion arising from such proceedings we hold that conviction for criminal contempt can be sustained only upon a record which shows compliance with the procedural safeguards established for the prosecution of any other crime of equal gravity", and that, since it was unclear whether the proceedings against Johns were civil or criminal and he could have reasonably expected that he was being charged with civil contempt, he could not be convicted of criminal contempt because he did not have the "adequate and clear notice required in all criminal proceedings".  (p 332.)

The Legislature, in the 1970 amendatory act, provided for the recall of a citizens' grand jury after the expiration of the term of service of the grand jurors:

"Sec. 7a.  Notwithstanding the provisions of section 1343 of Act No. 236 of the Public Acts of 1961, as added, being section 600.1343 of the Compiled Laws of 1948, the term of service of grand jurors shall be 6 months unless extended by specific order of the judge who summoned such jurors or his successor for an additional period not to exceed 6 months, except that the *grand jurors may be recalled at any time* by the judge who summoned such jurors or by his successor to conclude business commenced during their term of service."  (Em-

---

[6] *People v. Johns, supra,* p 330; *People v. Joseph* (1970), 384 Mich 24, 32; *People v. Nowicki, supra,* p 527.

[7] On the authority of *People v. Johns,* the Supreme Court reversed Roman Nowicki's conviction for criminal contempt even though the issue decided in *Johns* had not been preserved in *Nowicki* at the trial level or raised on appeal before the Court of Appeals.  *People v. Nowicki, supra.*

phasis supplied.)    MCLA 1971 Cum Supp § 767.7a
(Stat Ann 1971 Cum Supp § 28.947[1]).

"Sec. 19c.  Any witness who neglects or refuses
to appear or testify or both in response to a sum-
mons of the grand jury or to answer any questions
before the grand jury concerning any matter or
thing of which the witness has knowledge concerning
matters before the grand jury after service of a
true copy of an order granting the witness immunity
as to such matters shall be guilty of a contempt and
after a public hearing in open court and conviction
of such contempt shall be fined not exceeding
$10,000.00 or imprisoned not exceeding 1 year, or
both.  If the witness thereafter appears before the
court to purge himself of such contempt, *the court
shall order the recalling of the grand jury to afford
such opportunity,* and after appearance of the wit-
ness before the grand jury upon a transcript of the
testimony there and then given, the witness shall
be brought before the court and after examination,
the court shall determine whether the witness has
purged himself of the contempt *and shall commute
the sentence upon a finding that the witness has
purged himself."* (Emphasis supplied.)    MCLA
1971 Cum Supp § 767.19c (Stat Ann 1971 Cum Supp
§ 28.959[3]).

We construe these statutory provisions, read
together, to mean that after the expiration of the
term of service of the grand jurors the judge who
summoned the citizens' grand jury may, in his dis-
cretion, recall the grand jurors at any time to con-
clude business commenced during their term of
service; however, a witness who has been convicted
of contempt for neglecting or refusing to appear or
testify before a grand jury who thereafter appears
before the court expressing a desire to purge him-
self of the contempt has the absolute right at any
time to have the court order the recalling of the

grand jury so as to afford him an opportunity to purge himself. If, after the grand jury is recalled, the witness appears before the grand jury and testifies, he has an absolute right to have his sentence commuted upon a finding by the court that he has in fact purged himself.

Section 19c differs from the statute construed in *Shillitani* in that the statute there construed was a Federal statute which sets an absolute time limit on the term of a grand jury and does not provide for its recall. Section 19c likewise differs from the Michigan statutory provisions concerning one-man grand juries, which do not in terms provide for the recall of a one-man grand jury, and, indeed, do not require that a judge commute the sentence of a person convicted of contempt of a one-man grand jury who later purges himself.[8]

It would appear from the language of § 19c, which gives a witness neglecting or refusing to appear or testify the absolute right to purge himself at any time, that all contempt citations under § 19c are, what has come to be called, civil contempts, that in

---

[8] A witness neglecting or refusing to appear or testify before a one-man grand juror may be punished by a fine not exceeding $1,000 or imprisonment in the county jail not exceeding one year, or both, at the discretion of the court. It is further provided "that if such witness after being so sentenced shall offer to appear before such judge to purge himself of such contempt, the judge shall cause such witness to be brought before him and, after examination of such witness, the judge may in his discretion commute or suspend the further execution of such sentence". MCLA § 767.5 (Stat Ann 1954 Rev § 28.945).

In *People* v. *Joseph,* fn 6, *supra,* pp 32, 33, the Michigan Supreme Court ruled that a witness convicted of criminal contempt under this statute for refusing to answer questions did not have a right to be discharged upon expiration of the grand jury. The Court went on to hold that the proviso authorizing the judge in his discretion to commute or suspend further execution of the sentence if the witness purges himself of the contempt "is, so far as criminal contempt is concerned, an unconstitutional delegation by the Legislature to the judicial branch of government of a power [the pardoning power] which exists only in the executive". The proviso was deemed severable from the remainder of the statute and the witness's criminal contempt conviction was affirmed.

every case a witness convicted and sentenced under
§ 19c "carries in his pocket the keys to his cell". A
sentence for contempt under § 19c is necessarily
conditional and coercive, not unconditional and
punitive, and that is the established distinction
between civil and criminal contempt sentences.[9]

---

[9] In saying that this is a case of civil contempt, we follow the traditional definition that divides criminal and civil contempt. Under well-established law a witness sentenced for contempt who is entitled to be released upon purging himself has not been sentenced to serve a punitive or criminal sentence, but rather a civil sentence.

Now that it is clear that there is little or no advantage to reluctant witnesses charged with contempt under § 19c in having the contempt called civil rather than criminal—a witness convicted under § 19c has an absolute statutory right to purge himself in every case and expiration of the term of service of the grand jurors does not automatically entitle him to be released from serving a § 19c sentence—reluctant witnesses will, no doubt, insist that § 19c contempts are criminal and point to the possible one-year sentence and urge that they are entitled to a jury trial and other safeguards surrounding a criminal proceeding. In *Bloom* v. *Illinois* (1968), 391 US 194 (88 S Ct 1477, 20 L Ed 2d 522), the right to a trial by jury in a case of "serious criminal contempt," *i.e.*, where the contemnor faces a long sentence, was recognized and made applicable to the States. See, also, *Frank* v. *United States* (1969), 395 US 147 (89 S Ct 1503, 23 L Ed 2d 162); *Baldwin* v. *New York* (1970), 399 US 66 (90 S Ct 1886, 26 L Ed 2d 437). In *People* v. *Johns*, fn 5, *supra*, p 333, the Michigan Supreme Court declared "that conviction for criminal contempt can be sustained only upon a record which shows compliance with the procedural safeguards established for the prosecution of any other crime of equal gravity." See, also, 17 Am Jur 2d, Contempt, § 64; 47 Am Jur 2d, Jury, §§ 54, 55.

*Bloom* v. *Illinois* was preceded by *Green* v. *United States* (1958), 356 US 165, 183, 197 (78 S Ct 632, 643, 650; 2 L Ed 2d 672, 687, 688, 696), where the United States Supreme Court held that criminal contempts are not subject to jury trial as a matter of constitutional right. Mr. Justice Black, with whom Chief Justice Warren and Mr. Justice Douglas concurred, dissented; and, as indicated above, their view ultimately prevailed. Pertinent to our discussion is their intimation that there is no right to a jury trial where the court imposes conditional imprisonment for the purpose of compelling obedience to an order of the court. They declared, p 197:

"Before going any further, perhaps it should be emphasized that we are not at all concerned with the power of courts to impose conditional imprisonment for the purpose of compelling a person to obey a valid order. Such coercion, where the defendant carries the keys to freedom in his willingness to comply with the court's directive, is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees."

We recognize that the law sometimes evolves. through a redefinition of terms. The terms "civil contempt" and "criminal contempt" are

## II.

Under the provisions of § 19c, although the term of service of the grand jurors before whom Dr. Spalter appeared has expired, he may yet purge himself. If he desires to purge himself, he is entitled to have the grand jurors recalled and to appear before them. If he were in fact to purge himself, he would be entitled to have his sentence commuted. Therefore, he is not being held beyond the time that he has an opportunity to purge himself.

We do not read the language of the orders of sentence as entitling Spalter to be released.[10] Although the orders say that the sentence is for six months or "until the expiration of the grand jury term or until he purges himself to the satisfaction of the sentencing judge", it is apparent that the condition subsequent was inserted only to make clear that the sentence was conditional—civil, not criminal—that if Spalter were to purge himself he would be released and, additionally, that he would be released when he no longer has an opportunity to purge himself.

It had become customary in civil contempt cases to enter the form of order entered by the court in

not used in § 19c itself. The terms are, nevertheless, useful shorthand distinguishing the two kinds of sentences, differentiating the kind of sentence which Spalter was sentenced to serve from a punitive, unconditional sentence. However the law may in the future evolve in terms of safeguards appropriate in cases of civil contempt, a sentence under § 19c is the kind of sentence which in present legal lexicon can properly be called a sentence for civil contempt.

[10] Two orders of sentence were entered following Spalter's convictions for separate refusals to answer questions before the grand jury after he had been served with an order granting him immunity. The sentences were that he serve six months (in one case six months minus five days) in the Detroit House of Correction or "until the expiration of the grand jury term or until he purges himself to the satisfaction of the sentencing judge in which case the sentence shall be commuted."

this case.[11] This form of order was drafted and came into customary use at a time when there was no provision in the statute for recalling a grand jury. Under the circumstances, and having in mind that the purpose of the condition subsequent requiring discharge upon the expiration of the term of the grand jury is merely to make explicit that which is implicit as to all civil contempts, namely, that the contemnor must be released when he no longer has an opportunity to purge himself, we are persuaded that Spalter who, although the grand jurors' term of service has expired, can still purge himself, is not entitled to be released.

Under the statute the court must fix a definite period as the term of the sentence, not exceeding one year. The court did so. It set the sentences at six months, minus, in one case, five days. The condition subsequent, a circumlocution expressive of the court's intention that the sentence is conditional, civil not criminal, is not part of the sentence, it does not fix or change the term of the sentence.

The Legislature having decreed that in the case of a citizens' grand jury the contemnor has an absolute right to purge himself even after the expiration of the term of service of grand jurors, there was no need to express in the order of sentence that it was conditional; the condition subsequent may, therefore, be treated as surplusage. Indeed, as the statute spells out both the right of the contumacious witness to purge himself and the juridical consequence if he does so, any language in an order of sentence incompatible with the statute would be invalid.[12]

---

[11] See *In re Colacasides,* fn 4, *supra,* p 301.

[12] *Cf. In re Duff* (1905), 141 Mich 623, 624; *In re Evans* (1912), 173 Mich 25, 27; *In re O'Dell* (1962), 365 Mich 429; *People* v. *Mellor* (1942), 302 Mich 537, 542.

The argument that the sentencing judge does not have the power to recall the grand jurors because another judge convened the grand jury and, thus, it was not within the power of the sentencing judge to provide a means by which Spalter could purge himself is manifestly without merit. In order to decide this case we need not decide in whom resides the discretionary power granted by § 7a to recall the grand jurors to conclude business commenced during their term of service. It is enough to say that under § 19c a witness convicted of contempt for neglect or refusal to appear or testify has an absolute right to have the court recall the grand jurors. If Dr. Spalter appears before the Wayne Circuit Court and expresses a desire to purge himself, the court is obliged to recall the grand jurors to afford him that opportunity.

In light of our ruling that the expiration of the term of service of the grand jurors does not deprive Spalter of the opportunity to purge himself and that it does not entitle him to be relieved of serving the balance of his sentence, there need be no concern that by allowing him to be at large on bail during an appeal he would escape service of the entire sentence, thereby blunting the coercive impact of the sentence.[13] If Spalter appeals our Court's order and the Supreme Court affirms our order, then, since the grand jurors could still be recalled, Spalter would still have the opportunity to purge himself and, if he does not avail himself of that opportunity, he could be required to serve the balance of his sentence, approximately 71 days. On the other hand, if he is not released on bail pending appeal, the likelihood is that he would serve the entire 71

---

[13] Here the grand jury has already ceased to sit; a different question would be presented if a contemnor sought bail on appeal while the jury was sitting. See *In re Colacasides,* fn 4, *supra,* p 304.

days before any appeal could be heard and decided.

The questions presented are of importance to the jurisprudence of this state and it is, therefore, important that the Supreme Court have an opportunity to decide the questions before the matter becomes moot.

If on appeal our order were to be reversed, it would be an injustice to Spalter to require that he be incarcerated further under a sentence which, in that hypothesis, he was entitled to be discharged from serving when the term of service of the grand jurors ended on May 10, 1971.

It is those considerations which prompted us to grant bail. Additionally, we note that Spalter has appeared after being released on bail on a number of occasions and there is no reason to believe that he would fail to appear to avoid serving a 71-day sentence and thereby expose himself to other and more serious penalties.

Danhof, P. J., concurred.

O'Hara, J. (*dissenting*). I am unable to agree with my colleagues' disposition of this matter.

The statute governing the case, as I read it, provides in relevant part:

"the term of service of grand jurors shall be 6 months unless extended by specific order of the judge who summoned such jurors or his successor for an additional period not to exceed 6 months, * * * ."[1]

Following the above-quoted language and separated therefrom by a comma, there appears this language:

"except that the grand jurors may be recalled at

---

[1] MCLA § 767.7a (Stat Ann 1971 Cum Supp § 28.947[1]).

any time by the judge who summoned such jurors or by his successor to conclude business commenced during their term of service."[2]

In another section of the statute, the limits of punishment for contempt are recited, as are the effect of a grant of immunity.

"Any witness who neglects or refuses to appear or testify * * * after service of a true copy of an order granting the witness immunity * * * shall be guilty of a contempt and after a public hearing in open court and conviction of such contempt shall be fined not exceeding $10,000.00 or imprisoned not exceeding 1 year or both. If the witness thereafter appears before the court to purge himself of such contempt, the court shall order the recalling of the grand jury to afford such opportunity * * * ."[3]

After the Legislature stated flatly that the term of service of the grand jurors shall be six months unless extended by specific order for an additional period not to exceed six months, it said everything there was to be said as to the term of the grand jurors summoned.

As to the "except" for recall to conclude business commenced during their term, this contingency has to happen during the first six months or the additional six months originally authorized. The same is true of the "if" of a contemnor seeking to purge himself, in which event the court *must* recall the grand jury.

I hold the term of service of the grand jurors under this statute cannot exceed 12 months for any reason or under any circumstances.

I think it significant that in the proviso relating to concluding business commenced during the term

---

[2] MCLA § 767.7a, *supra*.

[3] MCLA § 767.19c (Stat Ann 1971 Cum Supp § 28.959[3]).

of service of the grand jurors, the Legislature used the word "recall," and not "resummon." It seems to me that "recall" can only relate to a period during which the grand jury has either completed its investigation or temporarily suspended its activities, but the term of the jurors has not been terminated by formal order or has not expired by the self-operative words of the statute.

I cannot ascribe to the Legislature the intent that a contemnor sentenced to one year on the last day of the term of the grand jurors would have a year to contemplate his decision while the grand jurors sat around, subject to recall dependent upon his decision.

The foregoing must be the construction already placed upon the statute by our Supreme Court under its order of remand specifically referring us to *Shillitani* v. *United States* (1966), 384 US 364, 371 (86 S Ct 1531, 1536; 16 L Ed 2d 622, 627). The whole *ratio decidendi* of *Shillitani* is found in the sentence,

"Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt."

If our Supreme Court had concluded that the "if" or "except" could extend the term of this grand jury it would not have remanded to us with specific reference to *Shillitani* where no "ifs", "buts", "ands", or "excepts" beclouded the issue. If the Supreme Court concluded that the term of the grand jurors under this statute could be extended beyond the definite one-year period, it certainly would not have referred us to *Shillitani* because *Shillitani* obviously could not control. The irreducible fact is petitioner-appellant is being illegally confined for

the precise reason expressed in *Shillitani, viz.:* the term of the grand jury has expired.

The sentence imposed by Judge Nathan Kaufman was perfectly legal and proper when he imposed it. He sentenced petitioner to six months or until the "expiration of this particular citizens grand jury" or until "you purge yourself of contempt".

Petitioner did not purge himself. He did not serve six months. He was in confinement under the sentence when the term of this particular citizens' grand jury expired, May 10, 1971. The fact that he did not serve the six months is not to the point. In *Shillitani's* language (pp 371, 372),

"The objection that the length of imprisonment thus depends upon fortuitous circumstances, such as the life of the grand jury and when a witness appears, has no relevance to the present situation * * * . Once the grand jury ceases to function, the rationale for civil contempt vanishes, and the contemnor has to be released."

Petitioner's period of legal confinement has expired. Habeas corpus directing his unconditional release should issue.