PEOPLE v WALKER

OPINION OF THE COURT

1. CONTEMPT—GRAND JURY—PENALTIES—LEGISLATIVE INTENT—STAT-
   UTES.

   The language of the statute which provides a maximum penalty
   for the refusal of a witness to appear or testify before a grand
   jury indicates a legislative intent that the maximum penalty
   applies to each grand jury where there are different grand
   juries (MCLA 767.19c; MSA 28.959[3]).

2. CONTEMPT—GRAND JURY—IMPRISONMENT.

   A witness may not be imprisoned for civil contempt beyond the
   life of a grand jury for refusal to appear or testify before that
   grand jury.

3. JURY—GRAND JURY—SECOND GRAND JURY.

   A new grand jury must start with a clean slate; testimony
   presented before one grand jury generally may not be made
   known to a second grand jury (MCLA 767.19f; MSA 28.959[6]).

4. CONTEMPT—GRAND JURY—MAXIMUM PENALTY—SECOND GRAND
   JURY.

   A witness may receive the maximum penalty for refusal to testify
   before a grand jury even where he had previously received the
   maximum penalty for refusal to testify to a previous grand jury
   regarding the same matter.

CONCURRENCE BY T. M. BURNS, P. J.

5. CONTEMPT—GRAND JURY—LIMITATIONS.

   *A witness may be twice held in contempt and punished for
   refusal to answer the same or similar questions by successive
   grand juries engaged in the same or similar investigations, but*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 17 Am Jur 2d, Contempt §§ 30, 111.
   Refusal to answer question before state grand jury as direct con-
      tempt of court. 69 ALR3d 501.
[3] 38 Am Jur 2d, Grand Jury §§ 10, 11, 39.

*the power to coerce information is not without limitations and
to proceed with the maximum penalty against a witness for a
third time may exceed the bounds of propriety.*

Appeal from Wayne, John D. O'Hair, J. Submitted May 3, 1977, at Detroit. (Docket No. 27483.) Decided September 20, 1977. Leave to appeal applied for.

James Walker, Sr., James Walker, Jr., and Arthur Jimerson were found in contempt for refusal to testify before a grand jury, were fined and sentenced to prison. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *David A. Hogg,* Assistant Prosecuting Attorney, for the people.

*Gage & Reizen* (by *Eugene Lumberg),* for defendants.

Before: T. M. BURNS, P. J., and BRONSON and C. W. SIMON, JR.,* JJ.

BRONSON, J. Defendants were subpoenaed in 1973 to appear before a Wayne County Citizens' Grand Jury and testify as to the solicitation of personal injury claims in connection with a particular law firm. Despite a grant of immunity, defendants refused to testify. They were then adjudged in contempt and sentenced to one year imprisonment. Defendants were later called again before the same grand jury and, after a refusal to testify, were convicted of contempt and sentenced to a second one-year imprisonment term. The second sentence was discharged in *People v Walker,* 393 Mich 333; 224 NW2d 879 (1975), as defendants had already served the statutory maximum one

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

year in prison for contempts before a grand jury. See MCLA 767.19c; MSA 28.959(3). Subsequently, a new grand jury was empaneled to investigate automobile insurance fraud. Defendants were summoned before this grand jury. Again, despite a grant of immunity, defendants refused to testify, whereupon they were fined $10,000 and sentenced to prison until the expiration of the grand jury's term[1] or until they purged themselves of the contempt by testifying.[2]

Defendants claim that the second grand jury asked the "same or similar" questions as the first grand jury and that therefore the *total* punishment cannot exceed the statutory maximum. In other words, defendants contend that the sentence for contempt for refusing to testify in response to the same or similar questions can never exceed one year and/or $10,000, even if the questions are propounded by different grand juries.

MCLA 767.19c; MSA 28.959(3) provides a maximum penalty for refusal to answer questions "before the grand jury concerning any matter or thing of which the witness has knowledge concerning matters before the grand jury". That both grand juries were investigating substantially the same subject matter can be inferred from defendants' grants of immunity. The prosecutor's petition in support of the original grant of immunity states:

"The prosecuting attorney has reason to believe that said witness has knowledge of a matter before the grand jury, to wit: The solicitation by the witness,

---

[1] The second grand jury's term expired on May 6, 1976.

[2] This was clearly civil contempt. The sole purpose of the sanction was to compel the witnesses to testify, not to punish them for refusing to testify. *See Spalter v Wayne Circuit Judge,* 35 Mich App 156, 160–161; 192 NW2d 347, 349 (1971).

James Walker, Jr., of numerous personal injury claims for the law firm of Barbara and Wisok; the setting up of various fraudulent accidents and the attempts to obtain money in connection with these accidents and the complete operation of the J & W investigative firm and its associations with the law firm of Barbara and Wisok."

The petition in support of the second grant of immunity states:

"The prosecuting attorney has reason to believe that said witness has knowledge of a matter before the Wayne County Citizens Grand Jury, to wit: The operation and maintenance of 'J & W Investigations' along with the purported and actual purposes of said business; any arrangement between the witness and any other person for the purpose of furthering any form of tax fraud, possible obstruction of justice either by the witness in connection with other witnesses in pending criminal cases or by other persons in connection with the witness; possible perjury and/or subornation thereof by the witness or other persons; the solicitation of personal injury claims by the witness or other persons on behalf of the former law firm of Barbara and Wisok P. C.; the knowing solicitation of false accident claims by the witness or by others on behalf of the abovementioned law firm for the purpose of obtaining money under false pretenses."

Thus, we must decide whether MCLA 767.19c; MSA 28.959(3) applies to refusals to answer before different grand juries investigating the same subject matter.

This issue is one of first impression in Michigan. *People v Walker, supra,* at 340, n 3, expressly left open the question of whether punishment for contempt before different grand juries can exceed the statutory maximum.

The statutory language, while not dispositive, is helpful. MCLA 767.19c; MSA 28.959(3) provides a

maximum penalty for the refusal of a witness "to appear or testify * * * before *the* grand jury * * * concerning matters before *the* grand jury". (Emphasis added.) The focus on one particular grand jury indicates an intent not to apply the maximum penalty to different grand juries.

This interpretation is consistent with the rationale of *People v Walker, supra,* which was that allowing separate sentences up to the statutory maximum for each refusal to testify before the same grand jury could potentially be abused so as to render the maximum penalty virtually infinite. On the other hand, interpreting the statute to allow up to the maximum punishment for contempts before *each* grand jury presents less of a potential for abuse.[3]

In addition, a new grand jury must start with a clean slate; testimony presented before one grand jury generally cannot be made known to a second grand jury. See MCLA 767.19f; MSA 28.959(6). It would hinder the lawful investigative functions of subsequent grand juries if witnesses' testimony could not be coerced because they already had been sentenced to the statutory maximum penalty by a prior grand jury. See *People v Walker, supra,* at 340.

Thus, the statutory maximum penalty does not

---

[3] At the least, defendants cannot be imprisoned for civil contempt beyond the life of the grand jury. *Shillitani v United States,* 384 US 364; 86 S Ct 1531; 16 L Ed 2d 622 (1966), *Spalter v Wayne Circuit Judge,* 35 Mich App 156; 192 NW2d 347 (1971). In addition, a grand jury investigation is not proper if there is no possible punishable crime to investigate, *e.g.,* if the statute of limitations had run on all possible crimes. *See People v Curtis,* 36 Cal App 2d 306; 98 P2d 228 (1939).

We agree with Judge Burns that repeated contempt sentences may at some point become unduly oppressive. When such abuse of the grand jury process occurs, we should act to protect the due process rights of witnesses. But this issue is not before us in the instant case.

apply to separate refusals to testify before different grand juries.

Affirmed.

C. W. SIMON, JR., J., concurred.

T. M. BURNS, P. J. *(concurring).* The witnesses contend that being twice held in contempt and punished for refusal to answer the same or similar questions by successive grand juries engaged in the same or similar investigations violates provisions of the U. S. and Michigan Constitutions. Similar arguments have been rejected by other courts. *In Re Martorano,* 464 Pa 66; 346 A2d 22 (1975), *State v Kasherman,* 177 Minn 200; 224 NW 838, *cert den,* 280 US 602; 50 S Ct 85; 74 L Ed 647 (1929), *United States ex rel Ushkowitz v McCloskey,* 359 F2d 788 (CA 2, 1966), *United States v Duncan,* 456 F2d 1401 (CA 9, 1972), *rev'd on other grounds,* 409 US 814; 93 S Ct 161; 34 L Ed 2d 72 (1972), *United States v Hawkins,* 501 F2d 1029, 1031 (CA 9, 1974), *cert den,* 419 US 1079; 95 S Ct 668; 42 L Ed 2d 674 (1974).

This substantial coercive power is not without limitations, however. As stated by the Supreme Court of Maine in a similar context, "[i]t may be that sentences for repeated contempts could become so numerous and oppressive as to constitute a denial of due process". *State v Vickers,* 309 A2d 324, 329 (Me, 1973). *Accord, United States ex rel Ushkowitz v McCloskey, supra,* 790.[1] As suggested by then-Judge Learned Hand, information coerced

[1] "Many methods have been devised at different times and places to compel persons to talk and to give the answers which their interrogators desire from them. Inquisitions doubtless aid in the discovery and prosecution of crime, but there comes a point where they must stop." *Second Additional Grand Jury v Cirillo,* 12 NY2d 206, 212; 237 NYS2d 709, 714; 188 NE2d 138; 94 ALR2d 1241 (1963), VanVoorhis, J., dissenting.

from a person under extreme circumstances is information too low in value and too high in cost.[2]

The witnesses were sentenced to, and have served, two terms of imprisonment each—one term lasting over a year in length, the other a little over three months. They have each been fined $10,000. Under the circumstances of this case, I do not find these sanctions shocking. To again proceed against the witnesses in the same manner in a further investigation of the same activities, however, may well exceed the bounds of propriety.

---

[2] "A man, faced with perpetual imprisonment till he discloses his confederates, will in the end find confederates to disclose." *Loubriel v United States,* 9 F2d 807, 809 (CA 2, 1926).