*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

M.K.,

        Petitioner-Appellee,

v

G.P.,

        Respondent-Appellant.

UNPUBLISHED
September 5, 2024

No. 366355
Allegan Circuit Court
LC No. 2022-066275-PH

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

The trial court found respondent guilty of criminal contempt for violating a personal-protection order (PPO) by sending petitioner a Snapchat message. The trial court ordered respondent to pay a fine of $500. We affirm.

Petitioner and respondent were previously involved in a relationship. In September 2022, petitioner requested an ex parte PPO, which the trial court granted. The PPO prohibited respondent from actions including "contacting the petitioner by telephone" or "posting a message through the use of any medium of communication, including the Internet or a computer or any electronic medium." The PPO informed respondent that a violation would subject him to various potential penalties, including "immediate arrest" and the "civil and criminal contempt powers of the court."

Respondent moved to terminate the PPO in October 2022, alleging that, contrary to petitioner's allegations, he "never threatened, stalked, or harassed [petitioner]."[1] In November 2022, the trial court held a hearing on respondent's motion. Two witnesses in addition to petitioner testified before the trial court had to adjourn the hearing due to its docket.

At approximately 2:00 a.m. on December 20, 2022, petitioner received a Snapchat message from respondent, which stated, "Morning [kiss face emoji] stop by sometime before this gets much more out of control." Petitioner called the police. The deputy sheriff who responded saw that

---

[1] The trial court denied that motion in January 2023, and that decision is not at issue in this appeal.

petitioner was upset about the message, and he took a picture of the message with his body camera. The deputy attempted to contact respondent about the incident, but was unable to reach him. The deputy then filed a complaint with the court about the violation.

The parties reconvened for the adjourned motion hearing on January 3, 2023. The trial court informed respondent that he was being accused of violating the PPO. The trial court started that it was "a criminal violation" that could result in up to 93 days in jail.

After adjourning the violation hearing once because the parties did not have the police report, the trial court held a hearing, over two days, on the reported violation. Petitioner testified that she knew respondent was the sender of the Snapchat message because of previous messages between them, and the message was part of a "thread" of saved messages between herself and respondent. The responding deputy testified at the hearing that when a user saves a Snapchat message, "it saves [the message] right on the chat thread that you and the other person would be having."

Petitioner admitted two exhibits that she asserted showed Snapchat messages from respondent. Exhibit 1 showed the December 20, 2022 Snapchat message as coming from a sender with respondent's first name. The exhibit also showed the sender's Snapchat profile, showing respondent's first name and the sender's username, which was comprised of respondent's first name followed by his last name spelled backward. Exhibit 2 showed a thread that included the December message along with an earlier message that was signed with respondent's first name.

Respondent testified that he had occasionally communicated with petitioner through Snapchat, but denied sending her a message on December 20, 2022. Further, respondent testified that, at the time the message was sent, he was in bed at home and did not have access to his phone. Respondent explained that when the message was sent, his employee had one of his phones in her possession, and his second phone was in his truck. Respondent asserted that his wife could verify that he never went to his truck that night, but she did not testify at the hearing.

In closing, the prosecutor argued that a preponderance of the evidence established that respondent sent petitioner the Snapchat message. Respondent's counsel responded that because this was a criminal matter, the correct evidentiary standard was proof beyond a reasonable doubt, and the evidence did not establish that respondent sent the message.

The trial court found respondent guilty of criminal contempt for violating the PPO. The trial court explained that the message came to petitioner in a consistent manner to previous messages respondent had sent to petitioner. The trial court stated that it did not "have any doubt" that respondent sent the message, and it found that the evidence established the violation beyond a reasonable doubt. The trial court ordered respondent to pay a $500 fine.

Respondent now appeals.

This Court reviews for an abuse of discretion a trial court's decision to hold a party in contempt. *In re JCB*, 336 Mich App 736, 747; 971 NW2d 705 (2021). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *ARM v KJL*, 342 Mich App 283, 293; 995 NW2d 361 (2022). Further, "[a] trial court's findings in a contempt proceeding

are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

"A person who fails to comply with a domestic PPO issued under MCL 600.2950 is subject to the criminal-contempt powers of the trial court." *ARM*, 342 Mich App at 293 (citing MCL 600.2950(23)). The petitioner must prove the violation beyond a reasonable doubt. *Id*. When determining whether there was sufficient evidence to sustain a criminal-contempt finding, this Court reviews the evidence in the light most favorable to the petitioner to determine whether the violation was proven beyond a reasonable doubt. *Id*. at 295. "Circumstantial evidence and the reasonable inferences arising from that evidence can constitute satisfactory proof of the elements." *In re JCB*, 336 Mich App at 748. "We do not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Id*. A "conviction for criminal contempt can be sustained only upon a record which shows compliance with the procedural safeguards established for the prosecution of any other crime of equal gravity." *People v Johns*, 384 Mich 325, 333; 183 NW2d 216 (1971).

Respondent first argues that the trial court applied an incorrect preponderance-of-the-evidence standard of proof. The trial court, however, indisputably and correctly made its finding beyond a reasonable doubt. Although the prosecutor mistakenly referred to the preponderance-of-the-evidence standard in closing argument, the trial court explicitly stated that it found that the evidence showed "at a level of proof beyond a reasonable doubt which is the standard of proof in a case of this matter." Moreover, the written order indicates that the trial court found respondent guilty of criminal contempt beyond a reasonable doubt. "A trial judge is presumed to know the law," including the applicable standard of proof, *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015) (citation omitted), and, here, the trial court stated the correct standard.

Respondent also argues that this Court should reverse the conviction on procedural grounds because the prosecutor thought that the case was a civil matter. The respondent, however, had sufficient notice that it was a criminal proceeding. Although the documents contained in the lower court record did not specify that the contempt charge was criminal in nature, the PPO informed respondent that he was subject to "immediate arrest and to the civil and criminal contempt powers of the court." Further, during the continued hearing on respondent's motion to terminate the PPO, held months before the violation hearing, the trial court informed respondent that he had been accused of a "criminal violation," and the violation could result in up to 93 days of incarceration.

Finally, the evidence was sufficient to support the trial court's finding that respondent violated the PPO. Respondent primarily argues that the prosecutor failed to present any evidence linking him to the Snapchat message. Petitioner's testimony and the documentary evidence, viewed in the light most favorable to petitioner, however, were sufficient to persuade a rational trier of fact of respondent's guilt. See *In re JCB*, 336 Mich App at 747, 753. "[C]ircumstantial evidence and the reasonable inferences arising from that evidence can constitute satisfactory proof." *Id*. at 748. The parties' past relationship and communications through Snapchat, the

content and timing of the message, and petitioner's testimony that the message appeared as a continuation of earlier messages between them support the trial court's findings.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young