## VAN DOMMELEN *v.* VAN DOMMELEN.

1. DIVORCE—"ALIMONY"—DEFINITION.

The word "alimony," though frequently defined as a portion of the husband's estate awarded to the wife for support, does not necessarily imply that he has any tangible property or known available resources from which alimony can presently be realized by legal process; nor is the power of the court to award an allowance so limited.

2. SAME—ALIMONY FOUNDED ON OBLIGATION OF HUSBAND.

As a recognized incident of divorce, alimony is founded·on the continuing obligation assumed by the husband under his contract of marriage to support his wife and children, not based exclusively on his property or estate, but also on his earnings or ability to earn and their necessities.

3. SAME—ABILITY OF HUSBAND RECOGNIZED.

In making an award of alimony, and later in enforcing it, the court is expected and required to have due regard to the ability of the husband, and the character and circumstances of the parties and all other circumstances of the case, and is also required, under 3 Comp. Laws 1915, § 11436, to include a provision in lieu of dower not only in property which the husband then owns but "may thereafter own," or in which he may have an interest.

4. MARRIAGE—DEFINITION.

Marriage is a life contract imposing on the husband support and maintenance of the wife in sickness and in health during life, contingent only on termination sooner by decree of a court for statutory reasons.

5. DIVORCE—EVIDENCE—SUFFICIENCY.

Evidence held, to entitle defendant wife to a decree of divorce on her cross-bill.

6. SAME—ALIMONY—EXCESSIVE AWARD—ABUSE OF DISCRETION.

Where the wife was granted a divorce on her cross-bill, a showing that she has a six-months' old nursing child, that she has no property resources, or means of support except as aided by her parents, who are poor and without means, and what she could earn, an allowance of $1,000 in weekly payments of $5 to her, and $3 per week for support of the child, held, not so excessive as to amount to an abuse of discretion, although the husband is without property, calling, employment, or income.

Appeal from Superior court of Grand Rapids; Dunham (Major L.), J.     Submitted January 19, 1922. (Docket No. 114.)     Decided March 30, 1922.

Bill by William Van Dommelen against Johanna Van Dommelen for divorce.     Defendant filed a cross-bill asking for a divorce and alimony.     From a decree for defendant, plaintiff appeals.     Affirmed.

· *Paul E. Cholette* and *John M. Dunham,* for plaintiff.
*Earl F. Phelps,* for defendant.

STEERE, J.  Plaintiff appeals from a decree of divorce granted defendant on her cross-bill charging extreme cruelty and nonsupport, his especial grievance against said decree being an award to her of $1,000 permanent alimony payable in weekly instalments. The case was heard in the superior court of Grand Rapids upon pleadings and proofs taken in open court on August 23, 1921, at which time both parties testified to being 19 years of age.  Plaintiff was then living at the home of his parents and, as he testified, without money, property, trade, employment or income.  Defendant was then living at the home of her parents, who were elderly people, without accumulated means, had raised a large family, and, were in limited circumstances.  She was nursing a baby six months old, of which she testified plaintiff was the father, and had named it Esther June.  She had no property, resources or means of support for herself and child, except as aided by her parents and what she could earn as then situated, of which she stated in her verified application for alimony, that—

"before her marriage she worked at the Bissell Carpet Sweeper factory, and that since her baby was born she has been obliged to go back there and work as much as she could, but she has not been able to work all the time and she should not work at all, as the baby is a nursing baby and she should remain with her child."

These young people had known each other for about 2 years when this case was heard.  Previous to their marriage she worked in a factory.  The only work he is shown to have engaged in was jitney driving.  In the spring of 1920 they commenced going together to dances, parks, canoe riding, etc., and soon became intimate.  When out together he would accompany her

home and when absent from the city wrote her letters and postal cards. In the fall it was discovered she was in a delicate condition, for which she claimed he was responsible. Accompanied by her brothers she went to the garage where plaintiff was and advised him of her condition. With his consent she interviewed his mother and the matter culminated in an agreement of marriage.

They were married December 1, 1920, and plaintiff took defendant to his parents' home where they lived together about three weeks. She planned to go to her parents' home during her confinement. This occurred December 25, 1920, earlier than anticipated owing, as she claimed, to a premature birth of the child resulting from his fast driving on a rough trip which they took to Sparta while living together. When indications developed that the event was imminent he took her to her parents' home and, as she claimed, was rough and unkind to her, profanely expressing a wish that her baby would be born dead. He visited her but once after it was born, did nothing for her but return her clothing which she had left at his parents' home, furnished her no support, wholly abandoning her and their child.

On April 18, 1921, plaintiff filed this bill alleging as ground for divorce that he was not the father of her child but under that charge had been deceived and intimidated into marrying defendant. She answered in denial with cross-bill asking for divorce from him and alimony on the ground stated. On the hearing plaintiff admitted improper relations with defendant during the summer of 1920, but claimed they began later than she testified, and too near the time of the baby's birth for it to have been begotten by him.

Upon the hearing it appeared to the court, after listening to the testimony with opportunity to observe the situation generally, and indicated disposition of the

parties towards each other, that a reconciliation was impossible, that the material facts alleged in plaintiff's bill were not well founded and the same should be dismissed.   On the other hand it satisfactorily appeared and was found by the court that plaintiff had been guilty of the several acts of extreme and repeated cruelty charged in defendant's cross-bill, and that she was a proper person to have the care, custody and education of their infant daughter.   A decree was rendered accordingly, also requiring plaintiff to pay to the clerk of the court $3 per week for support of the child, and to defendant an allowance to be in lieu of dower and in full satisfaction of all claims against him present and prospective, to a maximum sum of $1,000 in weekly payments of $5 each; but in case she remarry before the same is fully paid, such weekly payments shall cease and the amount then so paid shall stand as full payment of such award to her.

For plaintiff it is contended that this award against a minor, himself without money, property, calling, employment or income from any source, is excessive, unreasonable and under present conditions imposes upon him that which is impossible for him to perform.   To that point comparisons are made with other cases in which much smaller awards of alimony have been made against mature men having employment and trades, shown to be earning or capable of earning good wages.   The right of the court to make an award of permanent alimony under the facts shown here is also questioned, it being contended that permanent alimony contemplates an award to the wife, according to his resources and her needs, position in life, etc., out of the estate or property owned by the husband.

The word "alimony," though frequently defined as a portion of the husband's estate awarded to the wife for support, does not necessarily imply that he has any tangible property, or known available resources from

which alimony can presently be realized by legal process. The power of the court to award an allowance is not so limited. Comprehensively considered that term is generally used and understood by the courts and elsewhere as meaning an allowance to be paid by the husband to the wife for her support and maintenance, and often their dependent children, pursuant to an order or decree by the court in a divorce proceeding. As a recognized incident of divorce it is founded on the continuing obligation assumed by the husband under his contract of marriage to support his wife and children, not based exclusively on his property or estate but also on his earnings or ability to earn and their necessities. In making the award, and later in enforcing it, the court is expected and required to have due regard to the ability of the husband, the character and circumstances of the parties and all other circumstances of the case. Though based on existing facts it is largely anticipatory. Significant of the court's jurisdiction to make an allowance in the absence of any visible estate of the husband, the court is required on granting a decree of divorce to include in it a provision in lieu of dower, not only in property which the husband then owns but "may thereafter own," or in which he may have an interest. 3 Comp. Laws 1915, § 11436.

Marriage is a life contract imposing on the husband support and maintenance of the wife in sickness and in health during life, contingent only on termination sooner by decree of a court for statutory reasons. Plaintiff by such a contract assumed that obligation to defendant. The court held, properly we think, that his attempt to repudiate it was ill-founded, and his conduct towards defendant was such as to legally entitle her to the relief asked in her cross-bill. Forced into court on his initiative and compelled by his misconduct to seek divorce she did not lose her marital

right to support, which under a decree for alimony could be and was made a compulsory contribution under obligations of the marriage contract.

Award of such allowance and its enforcement are two different things. We have before us only the award. These young people yet have their adult life before them, with a life expectancy according to the American tables of mortality of over 42 years. Should plaintiff pay to defendant the allowance granted her of $5 per week to the full amount imposed he would be free for life in a little under four years, or sooner if she re-marry.

We fully concur in the suggestion of defendant's counsel that in awarding to the wife an allowance for support neither a premium upon her immoral conduct with plaintiff before their marriage nor his punishment afterwards should be capitalized as elements of the award, but eliminating all such considerations we are not prepared to find that under the facts disclosed in this case the amount awarded the destitute and deserted wife for her support and maintenance while nursing and caring for their now infant child during the time prescribed is excessive to an abuse of discretion by the trial court.

The decree will stand affirmed, without costs.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.