SWORD v SWORD

Docket No. 56896. Argued October 5, 1976 (Calendar No. 1).—Decided December 31, 1976.

Wiley J. Sword was found to be in contempt of Genesee Circuit Court, Donald R. Freeman, J., for failure to make child support payments due under a judgment of divorce granted to plaintiff Mary J. Sword. The defendant was brought before the court on an attachment for his arrest and represented himself after failing to obtain counsel when he was advised by the court that he was not entitled to appointed counsel. The defendant was sentenced to one year in jail. The Court of Appeals, D. E. Holbrook, P. J., and Bebeau, J. (R. B. Burns, J., concurring in result), reversed and remanded because the circuit court employed an improper standard for determining contempt, and the sentence made no provision to allow the defendant to purge his contempt at any time; but the Court of Appeals decided that he was not entitled to appointment of counsel (Docket No. 18466). Defendant appeals. *Held:*

1. The statute providing a penalty for failure to pay child support as ordered contemplates consideration of all factors relevant to the defendant's sufficient present ability to comply

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation § 865.
[2, 9] 24 Am Jur 2d, Divorce and Separation § 768.
[3] 24 Am Jur 2d, Divorce and Separation § 827.
[4] 24 Am Jur 2d, Divorce and Separation § 754.
[5] 24 Am Jur 2d, Divorce and Separation § 811.
[6] 21 Am Jur 2d, Criminal Law § 318.
[7] 17 Am Jur 2d, Contempt § 4.
[8] 75 Am Jur 2d, Trial § 191.
[10] 24 Am Jur 2d, Divorce and Separation §§ 768, 769.
[11] 24 Am Jur 2d, Divorce and Separation § 767.
[12] 24 Am Jur 2d, Divorce and Separation § 771.
[13, 15, 20] 24 Am Jur 2d, Divorce and Separation § 770.
[14] 17 Am Jur 2d, Contempt § 111.
[16, 18] 24 Am Jur 2d, Divorce and Separation § 867.
[17] 24 Am Jur 2d, Divorce and Separation § 766.
[19] 17 Am Jur 2d, Contempt § 92.

with the support order. Therefore, the circuit court employed an incorrect standard in determining contempt merely on the basis of the defendant's physical ability to work. Several possible lines of inquiry may be used by a court in determining contempt in addition to the accuracy of the alleged arrearage, but the questioning should reveal why the order of support was not obeyed. If the judge concludes from the testimony of the defendant and others that the defendant had sufficient ability to comply with the order or by due diligence could be of sufficient ability and has neglected or refused to comply, the defendant may be found in contempt of court.

2. The appointment of an attorney for an indigent does not rise to the level of a guaranteed constitutional right in proceedings to enforce child support orders. Inquiry concerning defendant's ability to pay, reasons for the arrearage, and mitigating circumstances normally are not complicated. There may be special circumstances which would lead the trial judge to appoint counsel, but he is not under a constitutional mandate to do so as a general rule.

3. The entire purpose of the civil proceedings is different from that of criminal contempt, as is the result. If the defendant is incarcerated for civil contempt, he must be placed in a position of holding in hand "the keys to the jail". His term of incarceration is therefore indefinite within the one-year maximum provided by statute.

4. It has long been held that juries are not available in contempt cases. Under the nonsupport statute there is no maximum time certain provided for punishment; it provides only for civil contempt and a conditional maximum period of incarceration from which at any time the defendant may free himself by complying with the order. The statute is remedial; no trial by jury is constitutionally required.

Justice Levin, joined by the Chief Justice and Justice Williams, concurred in a separate opinion which they wrote to:

1) emphasize the need for presentation of evidence in the contempt proceedings focused on defendant's present ability to pay;

2) indicate that the criteria for determining present ability to pay outlined in their colleague's opinion are pertinent to the extent in any given case they assist in making that determination;

3) express their view that an indigent defendant should be provided assistance for his defense where, considering the nature and course of the proceedings, fairness so requires. The

need for assigned counsel should be infrequent and only in those cases where there is a substantial controversy regarding ability to pay;

4) suggest that where a contemnor has remained in jail for over two weeks, the circuit court should, on its own initiative, reconsider its determination of present ability to pay and, if he is indigent, counsel should be assigned to represent him.

Affirmed and remanded to the circuit court for further proceedings.

59 Mich App 730; 229 NW2d 907 (1975) affirmed.

### Oᴘɪɴɪᴏɴ ᴏꜰ ᴛʜᴇ Cᴏᴜʀᴛ

1. Dɪᴠᴏʀᴄᴇ—Cᴏɴᴛᴇᴍᴘᴛ—Nᴏɴsᴜᴘᴘᴏʀᴛ—Sᴛᴀᴛᴜᴛᴇs.

The statute which authorizes contempt proceedings for failure to obey a child-support order requires that before a court may punish a defendant for contempt it must find that the defendant is or could be of sufficient ability to comply with the support order, taking into consideration all factors relevant to the defendant's ability to comply; therefore, a court's action was erroneous where the court inquired only of a defendant's physical ability to work and, finding him able to do so, sentenced him to jail for contempt for nonpayment of support (MCL 552.201; MSA 25.161).

2. Cᴏɴᴛᴇᴍᴘᴛ—Pᴜɴɪsʜᴍᴇɴᴛ.

The question of punishment for contempt depends upon whether the conduct is intentionally and wilfully contumacious or is qualified by circumstances which should fairly exempt the contemnor from serious blame.

3. Cᴏɴᴛᴇᴍᴘᴛ—Dɪsᴄʀᴇᴛɪᴏɴ.

The issuance of an order of contempt rests in the sound discretion of the court.

4. Dɪᴠᴏʀᴄᴇ—Cᴏɴᴛᴇᴍᴘᴛ—Nᴏɴsᴜᴘᴘᴏʀᴛ.

A defendant may be found in contempt of court for failure to pay child support as ordered if the court concludes from the testimony that the defendant has sufficient ability to comply with the order or by due diligence could be of sufficient ability and has neglected or refused to comply (MCL 552.201; MSA 25.161).

5. Cᴏɴᴛᴇᴍᴘᴛ—Cɪᴠɪʟ Cᴏɴᴛᴇᴍᴘᴛ—Pᴜɴɪsʜᴍᴇɴᴛ.

The purpose of confinement for civil contempt is remedial, not punitive; civil contempt seeks to coerce future compliance by imposing an indefinite term of punishment which must cease when the defendant complies, while criminal contempt imposes

imprisonment of definite duration as punishment for a past offense.

6. Constitutional Law—Criminal Law—Right to Counsel.

Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial (US Const, Am VI).

7. Contempt—Right to Counsel—Constitutional Law.

The objective of civil contempt is to bring about compliance with a court order entered after trial, not punishment for the offense of which the defendant was determined guilty at the time of trial; therefore, the constitutional right to an attorney in a criminal case, where punishment is contemplated for a criminal act, does not apply in a civil contempt case, where imprisonment is remedial or coercive (US Const, Am VI).

8. Divorce—Contempt—Right to Counsel—Nonsupport—Constitutional Law.

The appointment of an attorney for an indigent in a civil nonsupport proceeding for contempt does not rise to the level of a guaranteed constitutional right as a general rule; in some cases there may be special circumstances which would lead the trial judge to appoint counsel (US Const, Am VI).

9. Divorce—Contempt—Nonsupport—Civil Proceedings.

A defendant, if incarcerated for civil contempt for failure to comply with an order for child support, must be placed in a position of holding in hand "the keys to the jail"; his term of incarceration is therefore indefinite within the one-year maximum provided by statute (MCL 552.201; MSA 25.161).

10. Contempt—Criminal Contempt—Constitutional Law—Trial by Jury.

The punishment for criminal contempt where the intent is to punish, not compel, and the defendant cannot purge himself, may not exceed a $250 fine and 30 days imprisonment; there is no constitutional right to trial by jury for criminal contempt proceedings because the potential for punishment is not six months or more (US Const, Am VI; MCL 600.1715; MSA 27A.1715).

11. Contempt—Trial by Jury.

Cases of contempt of court were never triable by jury, and the object of the power would be defeated in many cases if they were.

12. DIVORCE—CONTEMPT—NONSUPPORT—CONSTITUTIONAL LAW—TRIAL BY JURY.

The statute which authorizes contempt proceedings for failure to obey a child-support order provides only for civil contempt and a conditional maximum period of incarceration from which at any time the defendant may free himself by complying with the order; therefore, the statute is remedial, and no trial by jury is constitutionally required (US Const, Am VI; MCL 552.201; MSA 25.161).

13. DIVORCE—CONTEMPT—NONSUPPORT—CIVIL CONTEMPT—IMPRISONMENT.

The statute which authorizes contempt proceedings for failure to obey a child-support order and provides for imprisonment for such contempt requires that a defendant be given the opportunity to secure his release by purging himself of his contempt, and a court is thereby prohibited from sentencing a defendant to an unconditional term of confinement (MCL 552.201; MSA 25.161).

14. DIVORCE—CONTEMPT—NONSUPPORT—CIVIL CONTEMPT—IMPRISONMENT.

The contempt proceedings authorized by statute in support cases are purely civil in nature, and the court has no authority to change civil proceedings under the statute to criminal proceedings; therefore, the action of a court in sentencing a defendant to an unconditional term of confinement with no provision for release if the defendant purged himself of contempt was erroneous (MCL 552.201; MSA 25.161).

CONCURRING OPINION

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

15. DIVORCE—CHILD SUPPORT—CONTEMPT—CONDITION.

*The statute which provides for contempt proceedings to enforce a child-support order provides only for civil contempt proceedings to change the defendant's conduct and compel compliance with the court's order; therefore, it was error to enter an order of confinement under the statute which did not state the condition which the contemnor could perform to become entitled to release from custody (MCL 552.201; MSA 25.161).*

16. DIVORCE—CHILD SUPPORT—CONTEMPT—ABILITY TO PAY—WORDS AND PHRASES.

*The statutory term "sufficient ability to comply" with a child-support order does not relate, in a contempt proceeding, to the*

*contemnor's past misconduct but to his present ability to pay to establish a standard consonant with the concept that the civil contemnor carries the keys of the prison in his own pocket (MCL 552.201; MSA 25.161).*

17. DIVORCE—CHILD SUPPORT—CONTEMPT—ABILITY TO PAY.

*The record must show, before a contemnor can be incarcerated for civil contempt for failure to comply with a child-support order, that he has the present ability to perform the condition of the proposed order of confinement as a factual predicate for the conclusion that the contempt is civil, in which case there is no right to trial by jury and the court is not necessarily obliged to appoint counsel for an indigent contemnor (MCL 552.201; MSA 25.161).*

18. DIVORCE—CHILD SUPPORT—CONTEMPT—ABILITY TO PAY.

*The inquiry in a proceeding for contempt for failure to obey a child-support order is a contemnor's present ability to comply with the order, including whether by the exercise of due diligence he would be able to comply; his past employment record, personal history of industry or lethargy, his efforts to modify the decree and the marketability of his skills would be relevant only insofar as they show his present ability to pay (MCL 552.201; MSA 25.161).*

19. DIVORCE—CHILD SUPPORT—CONTEMPT—INDIGENTS—ASSISTANCE OF COUNSEL.

*An indigent contemnor should be provided assistance of counsel for his defense in a proceeding for civil contempt for failure to pay child support, even though not constitutionally required, where, considering the nature and course of the proceedings, fairness so requires and there is a substantial controversy regarding the ability to pay: if the proceedings are brought by the state, its initiative and monetary interest in the proceedings are factors to be considered; where the moving party is represented or the state supplies an advocate or counsel for the moving party, the contemnor may require assistance of counsel; or the nature of proofs presented at the hearing may require the assistance of counsel.*

20. DIVORCE—CHILD SUPPORT—CONTEMPT—ABILITY TO PAY—RECONSIDERATION.

*A circuit court should, on its own initiative, reconsider its determination of a contemnor's present ability to pay child support as ordered where a contemnor has remained in jail for two*

*weeks, and should assign counsel to represent the contemnor if he is indigent.*

*Frederick E. Salim* and *Richard P. Banas (Martin F. Palus,* of counsel) for plaintiff.

*Dolores Coulter,* Legal Services of Eastern Michigan, and *William Burnham,* Michigan Legal Services, for defendant.

Cᴏʟᴇᴍᴀɴ, J. On April 16, 1973, Wiley Sword was found in contempt of circuit court (Genesee County) for failing to pay child support and was sentenced to one year in jail. The Court of Appeals reversed because the trial court had not applied a proper standard for determining contempt and because the order failed to provide for release upon purge of the contempt. Defendant appealed to this Court because the Court of Appeals refused to provide for appointment of an attorney and for trial by jury upon remand.

We agree with the Court of Appeals that the judge employed incorrect criteria in his finding of contempt and that the circuit court exceeded its authority in sentencing defendant to a year in jail without provision for his right to purge himself of the contempt. We also agree with the Court of Appeals that the circuit judge was under no constitutional mandate to appoint an attorney for defendant. Although there is no prohibition against such an appointment, court-appointed counsel is not required. Neither is a jury trial required in non-support civil contempt hearings.

I

Since Mary Sword filed for a divorce from Wiley Sword on December 30, 1960, defendant has been

in jail four times for non-payment of child support. During one of the times in jail, he was on a work-release program and worked at a potato chip factory. From those earnings, he made some payments, but departed from the job when released from jail. He claimed that he had been returned to Federal prison in Ohio on August 15, 1961 where he remained until paroled "in the latter part of '63" to Milwaukee, Wisconsin, where he was ordered to pay $15 per week under the "reciprocal code". He claimed to have made some payments until he became sick and was unable to work "for awhile". He apparently owed $405 under the Wisconsin order. He also was in jail for awhile in that state. Defendant has moved about the country and his whereabouts during the balance of this period remain unclear. However, he married again and had another family which was receiving public assistance (and had been for about four years). Defendant testified that he was enrolled in a work program but that the State Department of Social Services had been unable to find work for him.

Of the five children born during defendant's first marriage, Mary Sword Hunter and her second husband adopted the two younger children,[1] leaving three children for whom defendant was to pay $8 per week each. At the time of the adoption, defendant was released from all arrearage ($5,000) excepting $405 arrearage from the Wisconsin order.

At the time of the subject contempt hearing, one child was over 18, leaving defendant liable for payments of $8 per week for each of two children. He was $8,471.50 in arrears.

Mr. Sword appeared in circuit court on April 4,

[1] A copy of the probate court order of confirmation was filed in the circuit court on October 9, 1967.

1973 where he asked for and was granted time to obtain counsel. Bond was set at $1500 and defendant was returned to jail. At a hearing on April 16, 1973, defendant said he could not retain counsel. There is no indication that he asked or tried to ask for publicly funded legal assistance from Legal Services of Eastern Michigan, which now represents him, or from any other agency providing legal services free to indigents.

The court stated counsel would not be appointed because the matter was one of civil contempt. Defendant was sentenced to one year in jail by virtue of an order which failed to provide for release upon defendant's purging himself of the contempt. The sentence was imposed upon the finding that the arrearage existed as alleged and that defendant had "the physical ability to comply with the order".

On August 1, 1973, defendant filed a *pro per* motion to dismiss the contempt charge claiming that he was entitled to appointment of counsel and a jury trial. This was denied September 6, 1973. Through an attorney from Legal Services of Eastern Michigan, defendant appealed. On December 13, 1973, the Court of Appeals granted the application and, on its own motion, ordered defendant released pending a decision.

The Court's opinion was entered March 24, 1975 and reversed the trial court for two reasons. First:

"Because our statute contemplates consideration of all factors relevant to the defendant's ability to comply, and not merely the element of physical capacity to work, the action of the lower court must be reversed. Any further determination of defendant's ability to support his children must take into account more than his apparent physical ability to work and must consider whether, under all the circumstances, he has 'sufficient

present ability' to obey the support order, or neglected, or refused to obey the order." 59 Mich App 730, 734; 229 NW2d 907 (1975).

Second, the trial court "exceeded its authority" by imposing a sentence "with no provision for allowing him to purge his contempt at any time". Compare *Roblyer v Roblyer,* 354 Mich 226; 92 NW2d 330 (1958).

Because the proceedings were civil, the Court of Appeals declined to extend the right to appointed counsel and jury trials, saying:

"The defendant in a true civil contempt proceeding has no need of the ritual of a full-scale criminal trial, for he may end his imprisonment at any moment by merely complying with the court's order, or may convince the court after a short period of confinement that he will comply. His ability to secure his freedom at any time eliminates the necessity for the elaborate and costly proceedings involved in a criminal jury trial. Furthermore, the state, representing the people, has a substantial interest in the efficiency of proceedings designed to secure support for minor children. To require a pitched battle over the relatively simple issue of disobedience of a support order could lead to a further breakdown of the administration of justice in our courts as expenses and delays increase." 59 Mich App 737–738.

Judge R. B. Burns concurred in the result but said that the Court did not have to discuss the constitutional issue.

II

1913 PA 239 (MCLA 552.201–552.203; MSA 25.161–25.163) provides "a penalty for failure to pay money for the support and maintenance of minor children". MCLA 552.201 reads in part:

"Whenever the court shall be satisfied that the party is of sufficient ability to comply with said order, or by the exercise of diligence could be of sufficient ability, and has neglected or refused to do so, said court may forthwith punish such person for contempt of said court by making an order placing such person on probation or may commit him to the county jail * * * *for such period as said party shall continue to be in contempt,* not to exceed 1 year, however." (Emphasis added.)

The Court of Appeals correctly concluded that "our statute contemplates consideration of all factors relevant to the defendant's ability to comply". Justice CAMPBELL in *Haines v Haines,* 35 Mich 138, 143, 144 (1876), said "the question of punishment * * * will depend on whether the conduct * * * is intentionally and willfully contumacious, or * * * is qualified by circumstances which should fairly exempt him from serious blame". He said that "the process of contempt to enforce civil remedies is one of those extreme resorts which cannot be justified if there is any other adequate remedy".

The question in *Brown v Brown,* 135 Mich 141, 143, 146; 97 NW 396 (1903), was whether a support order "may be lawfully enforced through imprisonment for contempt". The Court found there was "as much necessity for stringent measures to compel the support of helpless children as there can be for that of the divorced wife".[2]

The Court in *Van Dommelen v Van Dommelen,* 218 Mich 149, 154; 187 NW 324 (1922), discussed an alimony award:

---

[2] *Also see Curtis v Curtis,* 253 Mich 312, 316; 235 NW 167 (1931), (contempt decree upheld as defendant "has been wilfully disobedient to the order of the court and has shamelessly neglected his child") and *In re Lupu,* 285 Mich 500, 504; 281 NW 236 (1938), (contempt upheld in part because "it is quite as much a matter of good public policy that he should be required to respect rather than defy the order of the court").

"As a recognized incident of divorce it is founded on the continuing obligation assumed by the husband under his contract of marriage to support his wife and children, not based exclusively on his property or estate but also on his earnings or ability to earn and their necessities. In making the award, and later in enforcing it, the court is expected and required to have due regard to the ability of the husband, the character and circumstances of the parties and all other circumstances of the case. Though based on existing facts it is largely anticipatory."

The "issuance of an order of contempt rests in the sound discretion of the court". *Barnaby v Barnaby,* 290 Mich 335, 337; 287 NW 535 (1939).[3]

The Court of Appeals decision is consistent with *Van Dommelen* in its finding that the trial court "must consider whether, under all the circumstances, [defendant] has 'sufficient present ability' to obey the support order". Also see *Wellman v Wellman,* 305 Mich 365; 9 NW2d 579 (1943).

Defendant, however, requests more specific criteria by which the judge may determine present ability to pay. The plethora of possible circumstances surrounding a multitude of alleged contemnors precludes the realization of our ambition to be helpful by precision.

Therefore, we only suggest some possible lines of inquiry of defendant in addition to the accuracy of the alleged arrearage.

1. Employment history, including reasons for any termination of employment.

2. Education and skills.

3. Work opportunities available.

4. Diligence employed in trying to find work.

---

[3] *Also see Wellman v Wellman,* 305 Mich 365; 9 NW2d 579 (1943), and *Lytle v Lytle,* 319 Mich 47; 29 NW2d 138 (1947).

5. Defendant's personal history, including present marital status and present means of support.

6. Assets, real and personal, and any transfer of assets to another.

7. Efforts made to modify the decree if it is considered excessive under the circumstances.

8. Health and physical ability to obtain gainful employment.

9. Availability for work (exact periods of any hospitalization, jail time, imprisonment).[4]

10. Location(s) of defendant since decree and reason(s) for move(s), if there has been any change of address.

Different circumstances will suggest other questions, but the sum total should reveal (1) whether there is an arrearage and, if any, the amount, and (2) why the order of the court was not obeyed. If the judge concludes from the testimony of defendant and others that defendant has "sufficient ability to comply with" the order or "by the exercise of due diligence could be of sufficient ability, and has neglected or refused" to comply, defendant may be found in contempt of court.

The trial court erred in limiting the test of ability to pay solely to that of physical ability.

III

Defendant claims that, on remand, he is entitled to appointed counsel if he is indigent. The Court of Appeals rejected the claim because the contempt was a civil proceeding and the possible burden on the courts outweighs any benefits to the defendant.

In *People ex rel Attorney General v Yarowsky*, 236 Mich 169, 171–172; 210 NW 246 (1926), defend-

---

[4] *E.g.*, Mr. Sword had been in a hospital at one time, in jail another time and in prison twice. When and for how long?

ant was held in contempt for violating an injunction against operating a house of prostitution. The Court said:

"It is not always easy to distinguish whether these proceedings are civil or criminal. The test is well stated in *State v Knight,* 3 SD 509; 54 NW 412; 44 Am St Rep 809 [1893]:

" 'If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. *The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court.* If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by fine or imprisonment, or both; and this is by way of punishment. In one case the private party is interested in the enforcement of the order, and, the moment he is satisfied, the imprisonment ceases. On the other hand, the State alone is interested in the enforcement of the penalty, it being a punishment which operates *in terrorem,* and by that means has a tendency to prevent a repetition of the offense in other similar cases.' " (Emphasis added.)

The heart of the argument in favor of defendant's constitutional right to an appointed attorney if he is indigent is that he may be incarcerated.

There is heavy reliance upon *Argersinger v Hamlin,* 407 US 25, 37; 92 S Ct 2006; 32 L Ed 2d 530 (1972), in which the United States Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial". *Argersinger* contemplates punishment for a criminal act whereas civil contempt is remedial or coercive. The objective is to bring about compliance with a

court order entered after trial, not punishment for the offense of which defendant was determined guilty at the time of trial.

More germane to the problem before us is *Gagnon v Scarpelli,* 411 US 778, 782, 783, 787, 790; 93 S Ct 1756; 36 L Ed 2d 656 (1973), in which the Court said probationers as well as parolees are "entitled to a preliminary and a final revocation hearing". Neither of these are "a stage of a criminal prosecution" but they do "result in a loss of liberty". Also see *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972).

The "more difficult question" was "whether an indigent probationer or parolee has a due process right to be represented by appointed counsel at these hearings". The Court said:

"[W]e think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel."

Providing attorneys in all cases would prolong hearings and greatly increase the government's financial burdens.

"We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel."

In some cases there may be special circumstances which would lead the trial judge to appoint counsel, but he or she is not under a constitutional mandate to do so as a general rule.

The nature of a civil non-support proceeding lends credence to plaintiff's contention that the appointment of an attorney for an indigent does not rise to the level of a guaranteed constitutional right.

The order of the court resulting from a previous trial has allegedly been disobeyed.

The affidavit of complaint usually is filed by the named plaintiff or Friend of the Court. After proper notice and when the time of hearing arrives, the judge in most cases questions the parties in a relatively informal hearing. The Friend of the Court is usually not an attorney nor represented by an attorney. The door is always open to counsel of named plaintiff and/or defendant. The facts establishing the arrearage are bookkeeping matters and rarely are subject to substantial dispute. Inquiry concerning defendant's ability to pay, reasons for the arrearage and mitigating circumstances normally are not complicated. Circuit judges handle many cases in a day or part of a day. As the Court of Appeals related, *Annual Report of the Supreme Court 1973* revealed 54,000 divorce cases disposed of and "[i]t can be safely estimated 25,000 support cases are added to the thousands of files of the Friend of the Court each year and there remain until all children are 18 years of age". 59 Mich App 742.

In 1973 there were 20,000 criminal cases disposed of by the circuit courts of Michigan. The large majority of indigent defendants have attorneys appointed at county expense. (This does not include those charged with misdemeanors and petty crimes for whom counsel is appointed for lower court disposition.)

The magnitude of probably more than doubling the number of appointed counsel to be paid for in

the main part by local funds is apparent. The exorbitant financial burden would be equalled by a need for more court time, personnel and space to accomodate defendants' demands for counsel and jury trial.

Although we would not deny any person a fair trial, the nature of non-support civil proceedings usually is not complex. If it is, the judge may appoint counsel. However, we do not make a general rule to fit the exception in civil non-support cases.

Defendant argues that equal protection of the law requires appointment of an attorney because another person could retain one. Such is true of all civil cases. If we were to say (on equal protection grounds) that every contempt defendant is entitled to counsel because some defendants can afford counsel, there would be no cap on the well. Every indigent wife and husband prosecuting or defending any suit would be entitled to counsel. We have said that the constitution is concerned with practical consequence. Certainly that tenet applies here where the overriding interest of the state is in obtaining support for minor children, not in punishing the defendant or removing him from society.

Unlike *Artibee v Cheboygan Circuit Judge,* 397 Mich 54; 243 NW2d 248 (1976), Mr. Sword's parenthood has been established and his support obligations ordered in a previous proceeding. Unlike in a criminal contempt, if defendant is incarcerated, he must be placed in a position of holding in hand "the keys to the jail". His term of incarceration is therefore indefinite within the one year maximum.

The entire purpose and thrust of the civil proceedings are different from those of criminal contempt—as is the result.

IV

Defendant also claims he is entitled to a jury trial.

*Argersinger* noted that the "right to trial by jury, also guaranteed by the Sixth Amendment by reason of the Fourteenth, was limited by *Duncan v Louisiana* [391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968)] to trials where the potential punishment was imprisonment for six months or more". 407 US 29. If the contempt is designed to punish, not compel, and if the defendant cannot purge himself, MCLA 600.1715; MSA 27A.1715 provides that the punishment may not exceed a $250 fine and 30 days imprisonment. There would be no right to trial by jury.

If the contempt is civil, the sentence may or may not exceed six months. However, *Duncan* was a Sixth Amendment case and applies only to criminal trials.

It has long been held that juries are not available in contempt cases. In *In re Chadwick,* 109 Mich 588, 598; 67 NW 1071 (1896), the Court said:

"We are not aware of any decision under a constitution similar to ours holding that one accused of contempt is entitled to a jury trial. It is apparent that this power should be lodged in the court. It is repugnant to all ideas of propriety to say that a jury should determine whether an act committed or statement made in the presence of the court or outside it was insulting and degrading to the court itself, and tended to obstruct the due course of justice. The authorities are nearly uniform that the court must determine the question. Such has been the uniform practice in the courts of this State. *Cases of contempt of court were never triable by jury, and the object of the power would be defeated in many cases if they were.* The power to punish contempts summarily is incident to courts of law and

equity.' Cooley, Constitutional Limitations (4th ed), p 394, note 2. The judicial department is entirely distinct from the legislative, and the Constitution leaves this power existing in the court as it was at the common law." (Emphasis added.)

Also see *People v Doe,* 226 Mich 5; 196 NW 757 (1924).

A bitter union/employer fight was involved in *Cross Co v UAW Local No 155,* 377 Mich 202, 210, 211; 139 NW2d 694 (1966). An injunction was violated. Because the Court found the "sentences were in the nature of punishment for offenses committed" and therefore were criminal, the proceedings "had to be carried on in observance of basic constitutional protections afforded to those charged with commission of a crime".

However, the Court said "it does not follow that it must have all the attributes of the usual criminal proceeding—one of which is trial by jury". The Court said a jury trial was not required by the constitution or public policy. Injunctive powers "ought to be exercised with utmost discretion and reserve" but, once asserted, "there is much to be said for preservation by the court of its power to enforce orders issued with speed and dispatch, even summarily".

In *People v Goodman,* 17 Mich App 175, 177–178, 179; 169 NW2d 120 (1969), Justice FITZGERALD wrote:

"Recent decisions of Michigan courts clearly follow the rule of *Shillitani v United States,* 384 US 364; 86 S Ct 1531; 16 L Ed 2d 622 (1966), that *when it appears the defendants conditionally carry the 'keys of their prison in their own pocket' then the action is essentially civil. If, in other words, the intent of the sentence can be said to be a coercive influence of the* future *behavior of the defendant in order to secure compliance*

*with a judicial decree, then the sentencing is a part of a civil proceeding.* However, where the future behavior of the defendants can be said to have no influence over the use of the keys, such use already having been decreed and controlled by the court; then the sentence is one of *punishment* for behavior already committed in violation of the decree, and the contempt action, being unconditional as to result, is criminal." (Emphasis added.)

The Court found that a jury trial was not mandatory even though that particular case was "determined to be criminal in nature". Also see *People v Nowicki,* 384 Mich 482; 185 NW2d 390 (1971).

A willful failure to pay child support can be a felony punishable up to three years in a state prison (MCLA 750.161; MSA 28.358) and, of course, a jury would be necessary. Punishment for failure to comply with a support order also could be brought under MCLA 600.1715; MSA 27A.1715 in which incarceration is limited to an unconditional 30 days. Under *Duncan, supra,* no jury would be required.

However, when MCLA 552.201; MSA 25.161 is employed, there is no maximum time certain provided for punishment. The statute provides only for civil contempt and a conditional maximum period of incarceration from which at any time the defendant may free himself by complying with the order. This statute is remedial. No jury is required.

V

The circuit court erred, however, in employing a civil statute as a vehicle for an unconditional order for punishment.[5]

---

[5] In *Spalter v Wayne Circuit Judge,* 35 Mich App 156, 160–161; 192 NW2d 347 (1971), the Court said criminal contempt "is to punish the offender for his disobedience or contumacious behavior". The purpose of civil contempt "is to compel obedience to an order of the court".

If the court contemplates coercion and the order reflects the remedial aspect of the contempt proceeding by setting forth conditions with which defendant may reasonably be expected to comply and thereby obtain release, the contempt proceeding is civil.

## VI

In summary, neither appointed counsel nor a jury trial is constitutionally required in civil non-support contempt proceedings. This conclusion is based both upon legal and practical analyses of the factors involved.

For instance, the hearings usually are not complicated or formal in the sense of a criminal trial. The judge, not a prosecutor, normally inquires of all witnesses. If the case warrants, the judge may appoint counsel. The possible incarceration for failure to obey court order is not unconditional punishment but is designed to coerce the support of children and obedience to the court order.

The impact of right to appointed counsel and jury in all civil contempt cases is beyond our ability to predict. The cost of such counsel and juries in probably thousands of cases annually includes not only locally paid attorney fees, but local financing of staff, courtrooms, jurors supportive system and, in whole or part, of additional judges.

However, the trial judge erred when he employed failure to pay the ordered support and the present physical ability of defendant to work as the sole criteria for incarceration for civil contempt of court. One cannot be expected to do the impossible, so further inquiry should have been directed to determine additional present circum-

stances of defendant. If he reasonably could have been expected to purge himself of the contempt while in jail, a conditional incarceration would have been appropriate. Therefore, in addition to employing the wrong criteria, the judge also erred in unconditionally sentencing defendant to a year in jail.

Affirm the Court of Appeals and remand to the circuit court for proceedings consistent with this opinion.

Fitzgerald, Lindemer, and Ryan, JJ., concurred with Coleman, J.

Levin, J. *(concurring).* Wiley Sword was $8,471 in arrears in paying child support decreed in a judgment of divorce. He was found to be in contempt and sentenced under the statute[1] to serve one year in the county jail. The Court of Appeals reversed and remanded for further proceedings; we all join in affirming that decision.

Our colleague states, and we agree, that

—"[t]he statute provides only for civil contempt";

—the contempt being civil, designed "to secure compliance with a judicial decree"[2] and not to punish for "past misconduct",[3] a contemnor "must be placed in the position of holding in hand 'the keys to the jail' ";

—the circuit court erred "in employing a civil statute as a vehicle for an unconditional order of punishment";

—the circuit court erred in limiting the inquiry on the statutory issue of whether Sword had "suffi-

[1] 1913 PA 239, as amended; MCLA 552.201; MSA 25.161.

[2] *People v Goodman,* 17 Mich App 175; 169 NW2d 120 (1969).

[3] *Jaikins v Jaikins,* 12 Mich App 115; 162 NW2d 325 (1968).

cient ability to comply" with the support order to whether he was in "reasonably good health" and had the "physical" capacity to work;

—a person required, by a support order, to pay child support does not have "sufficient ability to comply" with the order unless he has the "present ability to pay" the amount sought through the contempt proceeding;

—"[o]ne cannot be expected to do the impossible, so further inquiry should have been directed to determine additional present circumstances of defendant. If he reasonably could have been expected to purge himself of the contempt while in jail, a conditional incarceration would have been appropriate".

We also agree that in a civil contempt proceeding there is no right to a trial by jury and that an indigent defendant is not necessarily entitled to assigned counsel.

We write separately

—to emphasize the need for presentation of evidence in the contempt proceedings focused on defendant's present ability to pay;

—to indicate that the criteria for determining present ability to pay outlined in our colleague's opinion are pertinent to the extent in any given case they assist in making that determination;

—to express our view that an indigent defendant should be provided assistance for his defense where, considering the nature and course of the proceedings, fairness so requires.

—to suggest that where a contemnor has remained in jail for over two weeks, the circuit court should, on its own initiative, reconsider its determination of present ability to pay and, if he is indigent, counsel should be assigned to represent him.

I

The statute provides that a person who fails to pay child support, required by an order entered in a divorce action, may be detained if the court is satisfied that he "is of sufficient ability to comply with said order, or by the exercise of diligence could be of sufficient ability, and has neglected or refused to do so".

Alternative means of enforcement are provided:

—"placing such person on probation";

—"commit[ting] him to the county jail";

—"commit[ting] him to the county jail with the liberty of jail limits which shall be co-extensive with the limits of the county, during such hours as the court shall determine, for the purpose of allowing said party to go to and from his place of employment under such supervision as the court shall deem necessary"; or

—committing him "to any state prison or any penal institution in the state".

Confinement is permitted *for such period as said party shall continue to be in contempt,* not to exceed 1 year".[4] (Emphasis supplied.)

In limiting confinement to the period the contemnor "shall continue to be in contempt" the statute by its terms indicates a purpose to authorize only civil contempt proceedings.

The statute contemplates sentences "intended to operate in a prospective manner—to coerce, rather than punish. As such, they relate to civil contempt. While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial" if the contemnor may avoid further incarceration by complying with the court order.

---

[4] *See* fn 1, *supra.*

*Shillitani v United States,* 384 US 364, 370; 86 S
Ct 1531; 16 L Ed 2d 622 (1966).

"When the petitioners carry 'the keys of their prison
in their own pockets,' *In re Nevitt,* 117 F 448, 461 (CA
8, 1902), the action 'is essentially a civil remedy de-
signed for the benefit of other parties and has quite
properly been exercised for centuries to secure compli-
ance with judicial decrees.' " *Shillitani v United States,
supra,* p 368.

" 'Essentially, the difference between civil and crimi-
nal contempt is that the former seeks to change respon-
dent's conduct by threatening him with a penalty if he
does not change it, while the latter seeks to punish him
for past misdoings which affront the dignity of the
court. Criminal contempt being for past misconduct,
there is no way for one so convicted to purge himself of
the contempt.' *Jaikins v Jaikins,* 12 Mich App 115, 120;
162 NW2d 325 (1968)." *State Bar of Michigan v Cramer,*
399 Mich 116; 249 NW2d 1 (1976).

Since the statute provides only for civil con-
tempt proceedings the circuit court erred in enter-
ing an order of confinement that did not state the
condition which Sword could perform to become
entitled to release from custody. Sword was $8,471
in arrears in the payment of child support. Absent
indication by the court that he would be released
upon payment of less than the full arrearage, the
apparent condition was that he pay the arrearage
in full. The condition should have been stated in
the order.

II

The proceedings being for civil contempt (to
change the defendant's conduct and compel com-
pliance with the court's order), the statutory term
"sufficient ability to comply with said order" does
not relate to the contemnor's past misconduct but

to his present ability to comply; in short, his "present ability to pay".[5]

"Since the purpose of civil contempt is to enforce compliance with a court's order rather than to punish for disobedience, one convicted and sentenced for civil contempt may not be incarcerated beyond the time that he is able to comply with the court's order. In *Shillitani v United States, [supra]*, p 371, the United States Supreme Court declared:
  " 'However, the justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order.' " *Spalter v Wayne Circuit Judge,* 35 Mich App 156, 161; 192 NW2d 347 (1971).

A construction of "sufficient ability" that took into account past misconduct would deny the premise that the contemnor may not be incarcerated if he does not have the ability to comply with the court's order. Construing "sufficient ability" to mean "present ability to pay" establishes a standard consonant with that premise and the concept that the civil contemnor carries the keys of the prison in his own pocket.

### III

Sword had remarried and was receiving benefits for his second family from the Aid to Dependent Children, Unemployed Fathers Program (ADC-U). Presumably, the authorities were satisfied that he and his family were needy and that he could not obtain employment.[6]

---

[5] Similarly *see Johansen v State,* 491 P2d 759, 761 (Alas, 1971).

[6] Sword does not appear to be a "deadbeat" who has or could have the money to pay but simply forgets or refuses to do so.

He was apparently indigent and anxious to stay out of jail. He told the judge that he was willing to waive a hearing because "sixteen days up there in a cell block is getting me".

He was in a work program and seeking employment. Putting him

There is no evidence that Sword had the present ability to pay the $8,471 arrearage. Recrimination that if he had in prior years exercised greater diligence, industry and husbandry he might have improved his condition and would not find himself in this position has no bearing on his present ability to pay the arrearage.

## IV

The contempt being civil there is no right to trial by jury and the court is not necessarily obliged to appoint counsel for an indigent defendant.

There must, however, be a factual predicate for the conclusion that the contempt is civil. The record must show that the defendant has in fact the present ability to comply with the court's order.

The factual issue has constitutional implications. If the defendant does not have the present ability to pay, then he does not have the "keys to the jail"; what is nominally a civil contempt proceeding is in fact a criminal contempt proceeding—the defendant is not being coerced, but punished. If, because the defendant has no present ability to comply, the contempt proceeding is in effect criminal the defendant may be entitled to trial by jury, and, if indigent, to assigned counsel.[7]

in jail for a year assured that even if a job had been found he could not take it.

[7] By reason of the Sixth Amendment, as applied to the states through the Fourteenth Amendment, a person cannot be sentenced to serve more than six months for criminal contempt without an opportunity for a jury trial. *Codispoti v Pennsylvania,* 418 US 506, 511–512; 94 S Ct 2687; 41 L Ed 2d 912 (1974); *Taylor v Hayes,* 418 US 488; 94 S Ct 2697; 41 L Ed 2d 897 (1974).

"In order to obviate the confusion arising from such proceedings we hold that conviction for criminal contempt can be sustained only upon a record which shows compliance with the procedural safe-

Whenever it is proposed to jail a person for non-support a stenographic record is required and there should be careful inquiry focusing on his present ability to pay.

The moving party should be required to introduce all evidence in his possession bearing on the issue of present ability to pay. The defendant may be called upon to respond with full disclosure of all his assets and sources of income. Before the defendant can be incarcerated there should be findings supported by substantial evidence that he has the ability to perform the condition of the proposed order of confinement.[8]

V

If the defendant is employed and the issue concerns payment of current support allowances, there will generally be no need to incarcerate to obtain compliance. The statute provides: "the court may order an assignment to the friend of the court of the salary, wages or other income of the person responsible for the payment of support and maintenance, which assignment shall continue until further order of the court".[9]

The difficult factual issues are presented where it is sought to collect arrearages or the defendant is unemployed.

guards established for the prosecution of any other crime of equal gravity." *People v Johns,* 384 Mich 325, 333; 183 NW2d 216 (1971).

Similarly *see State Bar of Michigan v Cramer,* 399 Mich 116; 249 NW2d 1 (1976).

[8] If the arrearage is substantial, as it was in this case, the court might establish a condition of periodic payment of a smaller amount. The condition established has considerable bearing on present ability to pay. A defendant unable to pay $8,471 in a lump sum might have the ability to pay a smaller sum each week against such arrearage.

[9] MCLA 552.203; MSA 25.163. *See* fn 1, *supra.*

Our colleague's opinion states ten criteria for determining "present ability to pay".

Criterion 6, "[a]ssets, real and personal," will in every case be relevant to the inquiry. "[A]ny transfer of assets to another" would be relevant only insofar as "by the exercise of diligence" the defendant could recover the transferred assets.

Criterion 5, "[d]efendant's personal history, including present marital status and present means of support", would be relevant insofar as it shows means or lack of means of support and competing demands on defendant's resources.

Criterion 3, "[w]ork opportunities available", would be relevant only if the judge is willing to consider probation or a commitment with liberty of jail limits, thereby permitting the defendant to avail himself of such an opportunity. If a defendant is in jail, he is not "[available] for work [criterion 9]" and he cannot take advantage of a "work opportunity available".

Criteria 2, "[e]ducation and skills" and 8, "[h]ealth and physical ability to obtain gainful employment" would be relevant on the question whether a work opportunity identified by the moving party is actually available to the defendant.

Criteria 10, "[l]ocation(s) of defendant since decree and reason(s) for move(s), if there has been any change of address"; 1, "[e]mployment history, including reasons for any termination of employment"; 9, "[a]vailability for work (exact periods of any hospitalization, jail time, imprisonment)"; and 4, "[d]iligence employed in trying to find work" are marginally relevant. While the defendant's employment history might influence a prospective employer and his diligence in seeking and industry in holding employment might bear on whether he has ferreted out and availed himself of all opportu-

nities, such evidence would not tend to establish that he has in fact a current work opportunity and the present ability to pay.

Criterion 7, "[e]fforts made to modify the decree if it is considered excessive under the circumstances" would not tend to show present ability to pay unless the judge is willing to modify the decree and, as modified, the defendant has the present ability to comply fully with it.

In sum, the inquiry is not what was or might have been but what is: defendant's "present" ability to comply with the order, including whether by the exercise of diligence he would be able to comply. If the defendant is not placed on probation or allowed the liberty of jail limits during hours of employment, no work opportunity otherwise available is in fact available. Whatever defendant's past employment and personal history of industry or lethargy; diligence or neglect and the marketability of his skills, unless there is in fact a job available to him and he can, by taking advantage of that opportunity, comply with the court's order, he does not on that account have present ability to comply.

## VI

In some cases the moving party will be the custodial spouse. In others, whether or not the proceedings are brought in the custodial spouse's name, the moving party will be the friend of the court or the prosecuting attorney. Sometimes proofs will be offered by the custodial spouse without assistance. More often, they are presented by the friend of the court or a lawyer seeking to enforce the support order. Even if the friend of the court is not a lawyer, he is trained and experienced and feels at home in the courtroom. The

judge often takes over the questioning and develops the facts. An untrained person on the defensive in the unfamiliar environment of the courtroom may require assistance to respond adequately to the proofs adduced by the moving party's lawyer, the prosecuting attorney, friend of the court or the judge.

Significant in this connection is the state's interest in enforcing support orders. The burden of welfare payments for the support of dependent children has prompted government to seek enforcement of child support orders without regard to whether the person having custody of the child desires it. Under some Federal programs a portion of the monies recovered is returned to the counties. The courts in recent reports have called public attention to their role in recovering monies for the counties.[10]

If the proceedings are brought by the state, its initiative and monetary interest in the proceedings are factors to be considered in deciding whether assistance should be provided to the defendant. *Artibee v Cheboygan Circuit Judge,* 397 Mich 54; 243 NW2d 248 (1976). "That this is a confrontation between the state and an individual is 'a circum-

---

[10] Child support payments are made through the office of the friend of the court. Each county friend of the court has an enforcement staff which either on its own or on complaints filed by the custodial spouse initiates enforcement actions against the non-paying spouse. When court action is taken typically either the county prosecutor or a friend of the court staff person appears in circuit court to recommend and advance the contempt proceeding. Some judges take an active role in questioning the defendant regarding his or her failure to pay.

Where Federal money is involved (the custodial spouse is on ADC or ADC-U, for example), many counties have extra enforcement officers paid with Federal funds whose task is to pursue the non-paying spouse to recoup money for the Federal program, with a portion of that money going to the counties. Women on ADC do not receive the child support money paid by the fathers of their children; that money goes to the government unit making the ADC payments, giving it an additional incentive to pursue and collect from delinquent fathers.

stance of great importance in determining a standard of fairness.' " *Reist v Bay Circuit Judge,* 396 Mich 326, 345; 241 NW2d 55 (1976).[11]

Another factor to be considered is whether the state supplies an advocate or counsel to represent the interest of the moving party. *Artibee, supra; Reist, supra.* Where the moving party is represented, the defendant may require assistance to present his side of the controversy.

Still another factor is the nature of the proofs presented or expected to be presented at the hearing.

We find instructive the analysis of the United States Supreme Court in *Gagnon v Scarpelli,* 411 US 778; 93 S Ct 1756; 36 L Ed 2d 656 (1973), where the Court held that the state was not under a constitutional duty to provide counsel for indigents in all probation revocation cases, and that the decision regarding the need for counsel should be made on a case-by-case basis in the exercise of an informed discretion.[12]

---

[11] Similarly *see Tetro v Tetro,* 86 Wash 2d 252; 544 P2d 17, 19 (1975), and *Otton v Zaborac,* 525 P2d 537 (Alas, 1974), where counsel was appointed in civil contempt actions for nonsupport.

[12] "We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged

The need for assigned counsel should be infrequent and only in those cases where there is a substantial controversy regarding ability to pay.

## VII

If the court determines that the defendant has the present ability to pay and he is jailed for failure to comply with the court's order, it is expected that the oppressiveness of confinement will soon bring about compliance. This generally occurs. If that expectation is not realized it suggests that the defendant may not have the present ability to comply and that the court may have called upon him to do the "impossible".

Further inquiry, on the court's own initiative, is indicated, especially in those cases where the defendant was not represented by counsel during the contempt proceedings. We suggest as a safeguard against misuse of the civil contempt statute in cases where the defendant is without the wherewithal to comply, that the circuit court, as a matter of practice, review the civil contempt jail population periodically, not later than two weeks after sentence, and reassess determinations that the defendant has the present ability to pay; if the defendant is indigent, counsel should then be assigned to represent him.

---

violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." *Gagnon v Scarpelli,* 411 US 778, 790–791; 93 S Ct 1756; 36 L Ed 2d 656 (1973).

The United States Supreme Court, in reversing in *Maggio v Zeitz,* 333 US 56; 68 S Ct 401; 92 L Ed 476 (1948), a finding of civil contempt for failure to comply with a turnover order of a referee in bankruptcy, indicated that where the passage of time "has made sufficiently certain what was doubtful before" namely, the contemnor's inability to comply with the order, he should be released.[13]

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

---

[13] "Every precaution should be taken that orders issue, in turnover as in other proceedings, only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order.

\* \* \*

"Of course, to jail one for a contempt for omitting an act he is powerless to perform would reverse this principle and make the proceeding purely punitive, to describe it charitably. At the same time, it would add nothing to the bankrupt estate. That this Court in the *Oriel* case contemplated no such result appears from language which it borrowed from a Circuit Court of Appeals opinion which, after pointing out that confinement often failed to produce the money or goods, said, ' "Where it has failed, and where a reasonable interval of time has supplied the previous defect in the evidence, and has made sufficiently certain, what was doubtful before, namely, the bankrupt's inability to obey the order, he has always been released, and I need hardly say that he would always have the right to be released, as soon as the fact becomes clear that he cannot obey." ' Moreover, the authorities relied upon in Chief Justice Taft's opinion make it clear that his decision did not contemplate that a coercive contempt order should issue when it appears that there is at that time no wilful disobedience but only an incapacity to comply.

\* \* \*

"The trial court is obliged to weigh not merely the two facts, that a turnover order has issued and that it has not been obeyed, but all the evidence properly before it in the contempt proceeding in determining whether or not there is actually a present ability to comply and whether failure to do so constitutes deliberate defiance which a jail term will break." *Maggio v Zeitz,* 333 US 56, 69, 72–73, 76; 68 S Ct 401; 92 L Ed 476 (1948).